SO ORDERED.

SIGNED this 1st day of February, 2012.



_____
Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ON-LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

CRAIG EDWARD BRIGHT, ) Case No. 11-10214
) Chapter 13
Debtor. )

### ORDER DENYING CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

Debtor Craig Bright's chapter 13 plan proposes that he will cease paying the second mortgage on his former wife Kay's homestead, a debt that was set over to him in their 2007 divorce case. She objects. Determining whether an order to pay a mortgage on a former spouse's homestead amounts to a non-dischargeable domestic support obligation under § 101(14A) of the Bankruptcy Code involves a determination of the parties intent at the time the divorce settlement was made and whether the payment obligation has the effect of support. Because Kay Bright received residential custody of the couple's four minor children, paying the second mortgage on their residence amounts to a domestic

-1-

support obligation in the circumstances present in this case and confirmation of the debtor's plan should be denied.[1]

## I. Findings of Fact

Craig and Kay Bright were married for 17 years when they divorced in late 2007.[2] They had four daughters who, at that time, were 14, 12, 10, and 7 years old. Craig was a school principal with a salary of $72,476.[3] Kay was a school counselor who made about $49,000 a year.[4] The couple's 2006 joint income tax return reported gross salaries between them of $112,850.[5] Craig also ran a sole proprietorship called Bright Performance Horses in which he trained, showed, and judged at horse show competitions. In 2007, this business lost nearly <$13,000>.[6] Craig lost his principal position in May of 2010 when the school district did not renew his contract and is now a teacher in another school district that is about 50 miles from his home. His net teaching income dropped to approximately $42,000 in 2010 and his current teaching contract is approximately $48,000 a year.[7] He continues in the horse

---

[1] At the trial on confirmation held October 19, 2011 Craig appeared in person and by his attorney David Lund. Kay appeared in person and by her attorney Eric Lomas. The chapter 13 trustee Laurie B. Williams also appeared.

[2] Ex. 1.

[3] Ex. 3. Craig has a teaching degree from Emporia State University, a masters degree in special education and a masters degree from Wichita State University in administration.

[4] Ex. 7. Kay also obtained her teaching degree from Emporia State and has a masters degree in counseling from Wichita State University. Kay's teaching career was interrupted for a 9 year period when she stayed home to raise their children.

[5] Ex. 2.

[6] Ex. 3.

[7] Ex. 11. Bankruptcy Schedule I reflects a monthly net income of $3,472 from his teaching position, exclusive of the reported income from Bright Performance Horses. He started his current teaching position in August of 2010.

-2-

business, however, and incurred a loss of <$6,675> in 2010.[8] According to his tax return Schedule C, he expends $4,430 a year on car and truck expense to travel to horse shows. The Bright children have lived with Kay since the divorce.

When they divorced, the Brights lived in a home that was encumbered by a first mortgage in favor of Washington Mutual and a second mortgage to Beneficial Finance. The Beneficial mortgage was made in 2006 for $46,000 to consolidate credit card debt and to pay for improvements to what is now Kay's homestead. Kay contends that Craig insisted on the second mortgage because by paying off the credit card debts, which were mostly Craig's, he would improve his credit score and enhance his ability to buy the 20-acre lot where he now lives.[9] The Brights agreed that Kay would pay the first mortgage and Craig would pay the second mortgage. According to Beneficial's proof of claim, the payment on the second mortgage obligation is approximately $490 each month.[10] Kay's first mortgage payment is $1,454 each month. In his chapter 13 plan, Craig proposes to pay nothing on the second mortgage in the future.[11] He does propose to pay the house payment on his 20-acre homestead which amounts to $684 per month.[12] He also proposes to repay a $3,911 loan on a F-350 pickup truck and a $3,550 loan on a horse trailer. Craig's current housemate and he are co-debtors on his 20-acre homestead debt. He also maintains a minivan that he uses to travel to his teaching job. That vehicle is unencumbered.

Craig and Kay both testified that the allocation of the mortgage debts on the marital home in

---

[8] Ex. 6.

[9] The 20-acre lot was indeed acquired before the Brights' divorce and set over to Craig in the divorce. Craig's mother purchased the mobile home that sets on this property and apparently owns the mobile home as it is not listed in Craig's bankruptcy Schedule B.

[10] Claim 5-1, Part 2, p. 1.

[11] Ex. 12, p 6, ¶ 9.c.

[12] Ex. 12, p. 5, ¶ 9.b. ($49,000 mortgage).

-3-

their divorce decree was by mutual agreement and done to equalize their property and debts. They "verbally agreed" that if Kay made no claim to Craig's KPERS account or sought alimony, he would agree to pay the Beneficial debt. The decree does not memorialize that agreement. Instead, it states that "the parties shall each retain their respective retirement, and pension plans free and clear" of the claims of the other party.[13] Craig's KPERS account was worth more than Kay's because he had worked longer and held higher-paying positions than she for the bulk of their married life. The first mortgage debt was set over to Kay and the second mortgage debt was set over to Craig with a mutual hold harmless clause if the "responsible party fail[ed] to meet his or her obligation . . . ."[14] But there were no provisions in the decree providing for termination or modification of the second mortgage obligation upon remarriage, death, loss of employment or other change in circumstance. In another part of the decree, both Craig and Kay waived spousal maintenance.[15] Kay could not have afforded to make both mortgage payments at the time of the divorce because of the financial obligations inherent in raising four young girls. She claims that she is unable to pay the second mortgage payment at this time. Craig's initial child support obligation under the decree was $1,487 but is now $900 each month according to Kay.

Craig filed his chapter 13 petition and plan on February 3, 2011. His plan proposes to pay $415 for sixty months, or a total of $24,900. Craig would pay less than a 2% dividend to unsecured creditors whose claims total approximately $183,500.[16]

## II. Analysis and Conclusions of Law

### A. The Beneficial Second Mortgage Obligation is in the Nature of Support

---

[13] Ex. 1, p. 9.

[14] Ex. 1, p. 6-7.

[15] Ex. 1, p. 6.

[16] Ex. A.

-4-

*and is a Domestic Support Obligation (DSO) under § 101(14A).*

11 U.S.C. § 101(14A) defines a domestic support obligation (DSO), as pertinent here:

> . . . a debt that accrues before . . . the date of the order for relief in a case under this title . . . that is --
> (A) owed to or recoverable by – (I) a spouse, former spouse, or child of the debtor . . . .
> (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor . . . , without regard to whether such debt is expressly so designated;
> (C) established . . . before . . . the date of the order for relief in a case under this title, by reason of applicable provisions of – (I) a separation agreement, divorce decree, or property settlement agreement; . . .
> (D) not assigned to a nongovernmental entity . . .

In a chapter 13 case, the existence of a DSO is significant for several reasons. One, a debt that is a DSO is not dischargeable.[17] Two, the Court cannot confirm a chapter 13 plan if the debtor has failed to make all post-petition DSO payments.[18] Three, and as relevant here, a DSO is a first priority claim under § 507 and the plan must provide for payment in full, in deferred cash payments, unless the holder of the claim agrees to different treatment.[19] Because Kay objects to confirmation of Craig's plan, if the Beneficial mortgage obligation is a DSO, the plan must comply with § 1322(a)(2) and pay this first priority claim in full. The only DSO definitional element at issue here is subparagraph (B) – whether the Beneficial second mortgage debt is in the nature of support. There is no dispute that the Beneficial debt was set over to Craig in the divorce decree entered before he filed his bankruptcy petition [subparagraph (C)] and is not assigned to a nongovernmental entity [subparagraph (D)]. Nor does the fact that Craig is to pay the second mortgage directly to Beneficial, rather than Kay, disqualify the debt

---

[17] *See* 11 U.S.C. § 1328(a)(2) and § 523(a)(5).

[18] *See* 11 U.S.C. § 1325(a)(8).

[19] *See* 11 U.S.C. § 1322(a)(2) and § 507(a)(1)(A).

-5-

as a DSO under subparagraph (A).[20]

We turn now to the crux of this case – determining whether Craig's second mortgage obligation was in the nature of support and therefore, a DSO. The bankruptcy courts apply the same tests for determining whether a DSO is excepted from discharge under § 523(a)(5) as determining whether it is a first priority claim under § 507(a)(1).[21] Whether a matrimonial obligation is support or property division for bankruptcy purposes is a matter of federal bankruptcy law.[22] Bankruptcy judges look within the four corners of the decree and consider the respective financial circumstances of the parties at the time of the divorce.[23] The purpose of that inquiry is to determine the intent of the parties [or the state court] at the time of the decree and to examine whether the payments have the effect of support or property division.[24] We do not consider the present wherewithal of the parties, nor are we bound by

---

[20] *See Lewis v. Trump (In re Trump),* 309 B.R. 585 (Bankr. D. Kan. 2004) (Debtor's obligation to make second mortgage note payments to the second mortgagee, a third party, did not prohibit court from finding the debt nondischargeable under § 523(a)(5), citing *In re Miller,* 55 F.3d 1487 (10th Cir. 1995).); *Jones v. Jones (In re Jones),* 9 F.3d 878 (10th Cir. 1993)(Emphasis should be placed on the determination of whether a debt is in the nature of support, rather than on the identity of the payee.); *In re Miller,* 284 B.R. 734 (10th Cir. BAP 2002) (nature of debt owed and not identity of payee that governs whether debt is support within the meaning of priority provision, § 507(a)); *In re Palmieri,* __ B.R. __, 2011 WL 6812336 at *5 (Bankr. E.D. Mich. Nov. 21, 2011) (chapter 13 case). The Court also observes that the divorce decree included an indemnification and hold-harmless clause with respect to the debts set over to each responsible party. *See Wodark v. Wodark (In re Wodark),* 425 B.R. 834 (10th Cir. BAP 2010); Ex. 1, p. 7.

[21] *In re Krueger,* 457 B.R. 465, 474 (Bankr. D. S.C. 2011); *In re Boller,* 393 B.R. 569, 574 (Bankr. E.D. Tenn. 2008); *In re Miller,* 284 B.R. 734, 738 (10th Cir. BAP 2002).

[22] *See Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 721 (10th Cir.1993); *Busch v. Hancock (In re Busch),* 369 B.R. 614, 622 (10th Cir. BAP 2007).*see also Lowther v. Lowther (In re Lowther),* 266 B.R. 753, 756 (10th Cir. BAP 2001).

[23] *Sampson, supra* at 726; *Busch, supra* at 622.

[24] *See In re Loper*, 329 B.R. 704, 708 (10th Cir. BAP 2005) (Where debtor and ex-spouse's divorce is by agreement, whether an obligation under that agreement is in the nature of support is resolved by determining the parties shared intent at the time it arose and whether obligation had actual effect of providing support.). Because the divorce decree here was entered by the state court pursuant to the agreement or settlement between Kay and Craig, this Court focuses upon the intent of the parties as approved and memorialized by the divorce decree. *See* Ex. 1, p. 1: "The parties announce their case is settled and request the court approve the same. . . .[T]he Court . . . finds that . . . the parties have reached an agreement."

any labels applied to matrimonial obligations in a state court decree.[25] The term "support" as used in the statutes are entitled to broad application.[26]

Here Craig relies on the alimony "waiver" contained in the decree and the fact that the second mortgage obligation was paid direct to Beneficial, citing two of the four support "factors" enumerated by the Tenth Circuit Court of Appeals in *In re Goin*.[27] That court held that bankruptcy judges need to consider whether the spouse needed the payments as support at the time of the divorce. It then enumerated four factors that strongly militate toward an obligation being support: (a) whether there were minor children in the home and an imbalance of incomes between the spouses at the time of the divorce; (b) whether the agreement fails to provide explicitly for spousal support and under the circumstances the spouse needs support; (c) whether the obligation was payable to the spouse direct and in installments over time; and (d) whether the obligation terminated upon the spouse's death or remarriage.[28] As two the four *Goin* factors are present in this case [(c) and (d)] and two are absent [(a) and (b)], the Court must look further for the answer.[29]

---

[25] *In re Busch, supra* at 622 (Bankruptcy court should determine for itself the character of an obligation based upon the facts, not the denomination of the obligation in the divorce decree).; *In re Trump, supra* at 592; *Sampson, supra* at 725-26 ('The critical inquiry is the 'function served by the obligation at the time of the divorce.'); *Young v. Young (In re Young)*, 35 F.3d 499, 501 (10th Cir.1994).

[26] *Jones v. Jones (In re Jones),* 9 F.3d 878, 881 (10th Cir. 1993).

[27] 808 F.2d 1391 (10th Cir. 1987) (determining whether debt owed under agreement incorporated in divorce decree was excepted from discharge under § 523(a)(5)) .

[28] *Id.* at 1392-93. The evidence in *Goin* established three of the four support factors; only the termination of the obligation upon remarriage or death was lacking and the absence of that factor did not prevent the *Goin* court from finding that the debtor's obligation was support.

[29] As noted previously, the courts do not view the fact that the obligation is paid to a third party rather than to the spouse fatal to determining the obligation is support. The key inquiry is the nature of the debt, not the identity of the payee. *See* note 20, *supra*. The parties' waiver of alimony is more suggestive that the second mortgage debt was support in lieu of a specific alimony award and satisfies factor (b) - the parties' agreement fails to explicitly provide for spousal support. Even if the alimony waiver is unambiguous, the language of the decree is not controlling. *See Goin,* 808 F.2d at 1392; *Sampson*, 997 F.2d at 722-23.

More recent Tenth Circuit and BAP authority suggests that an examination of the shared intentions of the parties and the actual effect of the contested obligation is necessary.[30] One BAP case goes so far as to hold that, in general, an allocation of a debt secured by a lien on the home of the non-debtor and the children is likely to be support.[31] Kay did not have the wherewithal to service the second mortgage. If she could not pay it, her and the children's principal residence was subject to foreclosure. Even though the language of the decree "waives" alimony or maintenance, its effect is to provide further support to Kay and the Brights' children in the form of paying the second mortgage, thereby ensuring that Kay could maintain the home and they would have shelter.[32] Craig's 2007 salary income was considerably greater than Kay's, by almost one-third. Even considering that his business lost $12,000, his adjusted gross income is still nearly $60,000 for that year, twenty percent more than hers of $49,900. And although there was no evidence of the amount of Craig's and Kay's respective KPERS accounts, it was undisputed that Craig's retirement fund was larger than Kay's because Kay was not in the workforce for 9 years while she stayed home with their young children and Craig held a higher paying school administrator position. The fact that Craig lost his administrative position three years after the divorce and had to return to teaching at a lower salary is not relevant.[33]

---

[30] *Sampson,* 997 F.2d at 721; *In re Busch,* 369 B.R. 614, 622-23 (10th Cir. BAP 2007) (Debtor's second mortgage obligation on former marital home was in the nature of support).

[31] *Busch,* 369 B.R. at 622 (Spouse's need for support at time of divorce is sufficient to presume the parties intended the second mortgage obligation to be support, *citing Sampson,* 997 F.2d at 726, n. 7). *See also, In re Robinson,* 921 F.2d 252 (10th Cir. 1990) (debtor's second mortgage obligation on former marital home assigned to ex-spouse and order to hold ex-spouse harmless was support); *Trump,* 309 B.R. at 594 (Providing shelter for one's family is ordinarily in the nature of support and represents strong indicia that debtor's second mortgage obligation is in the nature of support; function of second mortgage obligation was to allow his ex-spouse and children to remain in the martial residence as their shelter).

[32] *See Trump,* 309 B.R. at 593 (second mortgage obligation on marital home was support, regardless of waiver of maintenance in marital settlement and separation agreement).

[33] *See Trump,* 309 B.R. at 594 (fact that debtor experienced significant downturn in his income after the divorce was not relevant to the determination of dischargeability).

The function, purpose, and effect of this division of debt is to provide support for Kay and her children.[34] Craig's obligation to pay the Beneficial second mortgage debt is therefore a DSO that is non-dischargeable and required to be paid under the debtor's plan. Because § 1322(a)(2)requires that all priority claims by paid under the plan and because § 1325(a)(8) requires that Craig pay and continue to pay any DSO that becomes due post-petition, this plan cannot be confirmed. Kay's objection to confirmation is SUSTAINED and confirmation of Craig's plan is DENIED.

### B. Even if the Beneficial Mortgage Debt were not a DSO, Craig can Provide for its Payment.

Before and after the divorce, Craig has pursued his passion for horses, horse training and judging. He cares for horses that his mother owns. The problem is that horses are an expensive hobby and by Craig's own admission, horses are more of a hobby to him than a vocation. Craig's income tax returns from 2006 to 2010 all show that the horse pursuit loses him money, sometimes as much as <$20,000> in a year as in 2008.[35] In his best year, 2010, he lost <$6,675>.[36] He expensed $4,460 of trucking expense in 2010. That amount alone would have paid almost ten mortgage payments to Beneficial. Indeed, the payments on his truck and trailer would go a long way toward servicing the Beneficial debt. According to Credit Union of America's proof of claim, the truck payment is $366. The

---

[34] Numerous courts across the country have determined in circumstances similar to those existing here, that a mortgage debt on a former marital home ordered to be paid by debtor is support. These cases reason that the purpose or function of such an obligation is to provide a home for debtor's children and ex-spouse that they otherwise would not have been able to afford. *See e.g., In re Krueger,* 457 B.R. 465 (Bankr. D. S.C. 2011) (mortgage payments on former marital home was a DSO and payable on a priority basis in debtor's chapter 13 plan); *In re Hayden,* 456 B.R. 378 (Bankr. S.D. Ind. 2011) (payment of both mortgages on marital home awarded to ex-wife); *In re Westerfield,* 403 B.R. 545 (Bankr. E.D. Tenn. 2009) (debtor's hold harmless obligation to ex-wife for making mortgage payments on former marital home was DSO and had to be paid in chapter 13 plan as a priority claim); *In re Leslie,* 181 B.R. 317 (Bankr. N.D.Ohio 1995) (credit line secured by open-end mortgage on marital home); *In re Tatge,* 212 B.R. 604 (8th Cir. BAP 1997) (payment of mortgage obligation served "the most basic of support functions . . .").

[35] Ex. 4.

[36] Ex. 6.

amount of the trailer payment cannot be discerned from Great Southern's proof of claim. In any event, the $366 truck payment is just $130 short of the Beneficial payment.

The Code requires that the Court find that Craig is acting in good faith both in proposing the plan and filing the petition.[37] Good faith entails a variety of factors and several of those come into play here.[38] The amount of proposed payments and the amount of the debtor's surplus matters because were the debtor to eliminate the truck and trailer payments or his business loss, he could pay the Beneficial payment. The type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7 is also important here – even if I were to find the Beneficial obligation to be a § 523(a)(15) property obligation, it would be dischargeable in chapter 13 were Craig to complete his plan, but not in chapter 7.[39] Finally, the cardinal factor is the motivation and sincerity of the debtor in seeking Chapter 13 relief. That Craig would elevate staying in the horse venture above paying the second mortgage on his children's home calls his motivation into question.

Craig can and should find a way to pay the Beneficial debt. His plan provides for him to retain a business that absorbs disposable income at the expense of not only Kay but all of his creditors. This is not his best effort. Passions should not trump priorities, at least not in bankruptcy. Whether the Beneficial obligation is or is not a DSO, confirmation must still be DENIED for lack of good faith.

### C. Plan Amendment

Craig is granted 21 days from the entry of this Order to file an amended chapter 13 plan that provides for a cure of any arrearage on the Beneficial mortgage and proposes current payment of the same. If no amended plan is timely filed, the case will be dismissed without further notice.

---

[37] § 1325(a)(3) and (7).

[38] *See Flygare v. Boulden*, 709 F.2d 1344, 1347-48 (10th Cir.1983).

[39] § 1328(a)(2).

-10-

### D. *Kay's Motion for Relief from the Stay*

On February 22, 2011, Kay filed a motion for relief from the automatic stay to "seek enforcement of the Divorce Decree in domestic court" so that she might enforce Craig's mortgage obligation under the divorce decree.[40] This motion was carried with confirmation of Craig's chapter 13 plan. The Court received no evidence at trial concerning Craig's default on the Beneficial mortgage or the extent of that alleged default, but Craig's plan provides that he will make no further payments to Beneficial and his plan payment falls far short of funding that payment through the trustee. Though the specific relief Kay seeks is unclear, she is not stayed from enforcing the DSO obligation against property that is not property of the estate.[41] Nor is she stayed from seeking to establish or modify a DSO[42] or from "withholding of income that is property of the estate . . . for payment of a domestic support obligation."[43] Having concluded that Craig's obligation to pay the Beneficial mortgage is in the nature of domestic support, this Court concludes that Kay's efforts to pursue a contempt citation or otherwise enforce the domestic court's order in state court are not stayed.[44] For these reasons, Kay's stay relief motion is DENIED as moot.

# # #

---

[40] Dkt. 13.

[41] § 362(b)(2)(B).

[42] § 362(b)(2)(A)(ii).

[43] § 362(b)(2)(C).

[44] *See In re Penaran*, 424 B.R. 868, 880 (Bankr. D. Kan. 2010) (garnishment of chapter 13 debtor's wages for past-due DSO not stayed)

-11-